GILMORE *et al.* v. WALL.

No. 1729.   Opinion Filed May 14, 1912.

(123 Pac. 1060.)  ·

BANKRUPTCY—Administration of Estate—Actions by Trustee—Evidence.   Evidence examined and held to reasonably tend to support the judgment.

(Syllabus by the Court.)

*Error from District Court, Murray County;*
*R. McMillan, Judge.*

Action by V. C. Wall, trustee in bankruptcy of James M. Gilmore and another, against Addie B. Gilmore and another. Judgment for plaintiff, and defendants bring error.   Affirmed.

*Cruce, Cruce & Bleakmore,* for plaintiffs in error.

*J. F. Bledsoe,* for defendant in error.

TURNER, C. J.   On April 22, 1907, V. C. Wall was appointed trustee in bankruptcy of the estate of James M. Gilmore and George B. Gilmore, Jr., and as such on September 27, 1905, commenced proceedings in the United States Court for the Indian Territory, Southern District, at Ardmore, against the plaintiffs in error, George B. Gilmore, Sr., and Addie B. Gilmore,

.his wife, the father and mother of the bankrupts. The object of the suit was to set aside a certain deed dated September 27, 1905, purporting to convey certain lots in the town of Sulphur on the ground that the bankrupts were insolvent,.and had conveyed them to defendants, plaintiffs in error, in fraud of their creditors. For answer defendants denied the fraud and pleaded in effect that the purchase money had been furnished the bankrupts by them for the purpose of buying the lots for the mother and set up a resulting trust. Upon these issues joined there was trial to the court and.judgment for the trustee, and defendants bring the case here.

It is assigned for error that the judgment is contrary to the law and the evidence. The record in substance discloses that in the spring of 1905 the bankrupts borrowed $1,700 from the Hayman State Bank of Kimmundy, Ill., evidenced by three promissory notes, the grandmother signing one with one of the bankrupts, and the mother signing two of the notes with the other bankrupt; that in May, 1905, the entire family moved to Sulphur where they all lived together and where, without means of their own, George went.into the mercantile business and James into the drug business, borrowing jointly $5,000 from the First National Bank of Sulphur and $9,000 from the mother from time to time; that in February prior to their coming said $1,700 was invested by the boys in the lots in controversy, a part of which were located in the Twenty-Fifth recording district and a part in the Seventeenth recording district, and the title thereto taken in their names; that on September 27, 1905, said lots, without consideration, were deeded by them, while insolvent, to defendants, who at once took possession and filed the deed for record at Pauls Valley in the Seventeenth recording district on October 9, 1905; that also in the spring of that year the bankrupts made a report to Bradstreet showing their assets $11,000 more than their liabilities, and, with the knowledge of defendants, included therein the lots in controversy and $5,000 stock in the Booth McClintock Company issued in the name of the mother, as part of their assets, and that they borrowed money from the First

National Bank of Sulphur on the strength of a similar statement made to the bank; that on November 24, 1905, the loan from the bank totaled $5,000, to secure which the bankrupt George pledged said stock indorsed in blank by the mother, after which the stock was sold for $4,500 and the proceeds credited on the note, leaving a balance due thereon in September, 1906, of $5,775.78; that at the time said lots were purchased the bankrupts each held stock issued in their name in said Booth McClintock Company for $1,000, and, while the testimony is not satisfactory, the best we can make out of it is that said lots were paid for out of the proceeds of the sale of this stock which went to pay the notes executed by the bankrupts payable to the bank of Kimmundy, Ill., where they borrowed the purchase money on the indorsement of their mother and grandmother; that about December, 1905, James transferred the drug stock to George, who assumed a note of $4,000 which the former owed said bank, and thereafter continued in the drug business, at the same time retaining his interest in the Gilmore-Scarborough Company engaged in the mercantile business; that on September 10, 1906, George sold and transferred his interest in both concerns to his mother, and on September 27th filed his voluntary petition in bankruptcy, which was followed by a similar petition by his brother James. The total liabilities were about $18,000, and the assets, less the lots, about $9,000. This was substantially all the evidence. Independent of the report of the bankrupts to Bradstreet and the bank, which defendants say it was error to admit in evidence, the fact that the evidence reasonably tends to prove that the deed in question was made without consideration while the bankrupts were insolvent was sufficient to justify the court in finding the same to have been in fraud of creditors.

The evidence reasonably tending, as it does, to support the judgment, the same is affirmed.

All the Justices concur.